731 So.2d 759 (1999)
Ulysses GLEE, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1820.
District Court of Appeal of Florida, Fourth District.
April 7, 1999.
*760 Richard L. Jorandby, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Ulysses Glee appeals an order of the trial court revoking his probation where his probation officer discovered him at home, alone, with three children ages three, five and six in contravention of a condition in his probation order which for-bade unsupervised contact with children less than 18 years of age. In a case which essentially boils down to witness credibility, we affirm because there is sufficient evidence in the record to support the trial court's conclusion that the violation was deliberate and willful.
Glee had been placed on probation after pleading guilty to five counts of child abuse stemming from excessive physical punishment inflicted on his own children. The order of probation contained the following conditions relevant to this appeal:
(11) No contact with the victims, R.C.; M.B.; U.G., Jr.; T.G.; A.G.; or with Hattie Glee.
(12) No contact with children less than eighteen (18) years unless supervised by an adult who knows of these charges and its disposition.
The affidavit of violation was filed after Glee's probation officer made an unannounced visit to Glee's home and three young girls, ages three, five and six, came from a back room. No other adults were present in the home. The children were the daughters of Glee's live-in girlfriend, who, according to Glee, had gone to choir practice. When Glee was asked about the girls' presence and the terms of his probation, he replied that he understood that he was not to be alone with his own children, the victims of the underlying offense. Following the presentation of testimony, defense counsel argued that Glee's violation had not been willful. At the conclusion of the hearing, the trial judge found that Glee had willfully violated his probation. Glee's probation was revoked, and he was sentenced to twelve years in prison. This appeal followed.
"Probation may be revoked only upon a showing that the probationer deliberately and willfully violated one or more conditions of probation." Steiner v. State, 604 So.2d 1265, 1267 (Fla. 4th DCA 1992). "[T]he willful and substantial nature of the violation must be supported by the greater weight of the evidence." Id. A trial court's decision to revoke a defendant's probation is reviewed on appeal for an abuse of discretion. Id. In his sole point on appeal, Glee contends that there was insufficient evidence to support a finding that his violation of condition twelve of his probation was willful and, therefore, the trial court erred in revoking his probation.
It was undisputed at the violation of probation hearing that Glee was alone with three children under the age of eighteen, contrary to condition twelve of his order of probation. The only question is whether he willfully violated condition twelve. Glee's defense was that he misunderstood the terms of his probation and believed that he was only prohibited from being alone with his own children. To support the notion that Glee was confused, defense counsel presented the testimony of Dr. Dougherty, a psychologist, who testified that Glee had only a first grade reading level and that the probation order was written at a sixth grade level. Additionally, *761 Glee testified that his mistaken belief was bolstered by the fact that his probation officer had been to his place of residence on a prior occasion, that the minor children were present at the residence and in bed and that "[w]hen you open the door there was two beds," and that nothing was said to indicate there was anything wrong.
The State pointed to the fact that the order of probation in this case, first, stated that Glee could not have contact with the victims of his abuse, listing each of Glee's children by his or her initials. Then, the condition immediately following that which prohibited Glee from having contact with his own children, provided that Glee was to have "NO CONTACT WITH CHILDREN LESS THAN EIGHTEEN (18) YEARS UNLESS SUPERVISED BY AN ADULT WHO KNOWS OF THESE CHARGES AND ITS DISPOSITION." Additionally, the State presented the testimony of Martha Tyndal, a probation officer, who testified that she read "word for word" to Glee every condition of his probation, including the condition precluding Glee from having contact with any child under eighteen unless supervised by an adult, and that Glee had signed the order in her presence, acknowledging that he had been instructed on the conditions.
The trial judge rejected Glee's testimony that he was confused about the conditions of his probation, finding that it was "inconceivable" that Glee was not aware that he was not to have contact with any children under eighteen unless supervised. Given the facts of this case, we cannot conclude that the trial judge's finding that the violation was willful and was not a product of confusion or misunderstanding is an abuse of discretion. The probation order itself first prohibited contact with Glee's own children, listing them by their initials, and then prohibited contact with any minor children. As to Glee's testimony that his mistaken belief was bolstered by Tyndal's prior visit to his home, the trial court was free to find this testimony not credible. Second, Glee did not say that he was alone with the children during the probation officer's prior visit, and it wasn't even clear from Glee's testimony that Tyndal actually saw the children at the time. Finally, since the conditions of probation were read to Glee, his lack of reading comprehension and first grade reading level do not demand a finding that, because he could not read well, he was unaware of the conditions of his probation.
We find Steiner v. State, 604 So.2d 1265 (Fla. 4th DCA 1992), one of the opinions relied on by appellant, similar but distinguishable in some meaningful respects. In that case, Steiner pled nolo to two counts of attempted capital sexual battery. One of the conditions of his probation provided that he have "No unsupervised contact with minors. Any contact with minors to be supervised by an adult who is aware of these charges and disposition. This does not include his stepsons." Id. at 1266. The facts leading to the violation were as follows:
On the day of the violation, appellant, his wife Sherry Steiner, and his niece Stacy Steiner, age sixteen years, had been doing laundry at appellant's residence. Appellant's wife, Sherry, was living separate from him because another condition of his probation mandated that he have no contact with the victim of his sexual battery; the victim is his wife's daughter and appellant's stepdaughter. Appellant's niece, Stacy, lives with appellant's wife and her daughter.
After Sherry and Stacy finished doing laundry, Sherry left for work. Appellant and his niece left together a few minutes later, so that appellant could go to his probation office visit and Stacy could be dropped off at his wife's home afterwards. Appellant and his niece walked into appellant's probation officer's (PO) office, and the PO noticed that Stacy looked under the age of eighteen. The PO asked Stacy how old she was, and Stacy replied that she was sixteen and would be seventeen in a few months. The PO also confirmed the *762 girl's age with appellant. The probation officer then told appellant that he was in direct violation of a special condition of his community control, and she subsequently filed an affidavit of violation.
604 So.2d at 1266. The trial court revoked Steiner's probation. This court reversed, finding that the violation was not willful. In so doing, the panel pointed to the following facts: (1) in his defense, Steiner testified that Stacy knew of the charges and that it did not occur to him that taking Stacy home would be a problem; (2) Stacy testified that because appellant's wife, with whom she was living, was working two jobs and "had to leave immediately for work," it was not possible for Steiner's wife to take her home; and (3) the probation officer testified that, in the past, Steiner and his wife had called her when they had questions concerning whether a particular action was permitted, when they needed clarification, and when they needed approval.
There are a number of ingredients which render Steiner unlike the instant case. In Steiner, a finding of willfulness was negated by the fact that the probationer took the minor with him for his probation office visit. Surely, if Steiner had recognized that his being alone with his niece was a violation, he would not have brought her to his probation officer. Second, in Steiner, there was evidence that, in the past, Steiner had made every attempt to comply and that when he had questions or was uncertain as to whether a particular action was permitted, he called his probation officer. Finally, in Steiner, it appears that had the probationer not agreed to take his niece home, she would have been left without a way home. None of those factors are present in the instant case. Unlike Steiner, where the fact that the probationer brought the minor to his probation officer negates a finding of willfulness, here, the probation officer discovered the minors at Glee's residence. In sum, we find no abuse of discretion in the trial court's finding of willfulness and affirm the order revoking Glee's probation.
AFFIRMED.
WARNER, J., and CONNER, BURTON, C., Associate Judge, concur.