796 So.2d 1222 (2001)
Claude DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-907.
District Court of Appeal of Florida, Fourth District.
October 10, 2001.
*1223 Carey Haughwout, Public Defender, Margaret Good-Earnest and Samuel A. Walker, Assistant Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Thomas C. Mielke, Assistant Attorney General, Fort Lauderdale, for appellee.
WARNER, J.
Appellant challenges his nine year prison sentence, entered after the court revoked his probation upon a finding that appellant willfully and deliberately violated his probation by contacting the victim of the crime for which he was on probation. He claims that any contact was incidental and not in violation of the court's oral instructions at sentencing. Although this is close, we conclude that there is evidence supporting the revocation. We therefore affirm.
Appellant was placed on probation in June of 1994 for committing lewd and lascivious acts on a child under 16 years old. A special condition of his probation was as follows: "You will have no contact with the victim directly or indirectly and defendant cannot live on the property of her family." Appellant and the victim's family were close friends. Even after the incident, the victim's father did not believe that appellant had done anything to his daughter. For a long period of time after appellant was placed on probation, he didn't visit with the family, although the victim's father would come by his trailer.
Appellant was instructed on the terms of his probation when he was originally sentenced and again in March of 1999 when a new probation officer was assigned to his case. The officer testified that he told appellant that "he was to have no contact just exactly the way it says, and emphasized that he is not to have any contact in any way, shape or form with the victim directly, indirectly, letters, telephone, family, *1224 going by the residence ... anything." Appellant indicated that he fully understood the terms of his probation.
On April 7, 1999, the victim was placed under supervision of the Department of Correction for herself committing a lewd and lascivious act on a child. As part of her community control, she wore a monitoring device and was confined to her parents' residence in Stuart, except during the hours of her employment. Coincidentally, the sheriff's department had set up video surveillance of the Stuart residence in connection with another investigation. A review of the surveillance tapes from April 12, 1999, through June 30, 1999, showed that appellant visited the victim's residence on April 12th, June 7th, and June 30th, 1999. The state filed an affidavit of violation of probation for these visits.
At the hearing, the surveillance officer narrated the videotapes for the court. The videotape placed in evidence was a copy of a much longer series of videotapes in possession of the sheriff's department. As an aside, the videotape transmitted to this court as part of the record is grainy and light, and it is difficult to determine what is being viewed. At trial, the officer apologized to the court, explaining that the video is a very slow video for twelve hour segments, and it was speeded up for the court. The result is that it was "a little jumpy." Throughout the officer's testimony, he would pause the video to identify people and locations for the court. He also explained that the original surveillance tape, from which this tape was made, was a lot clearer. There was no objection to the playing of the videotape.
What the officer told the court was that the tape revealed appellant, whom the officer knew, on the property on April 12, 1999, June 7, 1999, and June 30, 1999. On June 7th, appellant arrived around ten in the morning. Together with the victim's father, he worked on the victim's sister's vehicle. The officer testified that appellant entered the house about 10:25, as it was raining that day. He exited the premises at 11:01. The officer testified to another scene on the videotape in which he stated that the appellant again entered the residence from 12:43 until about 1:00 p.m. Appellant then exited and recommenced working on the vehicle. At some point, he again went into the residence because the tape showed him exiting at 2:07 and driving away. The officer then identified the victim exiting the residence within a few moments after appellant. The victim's community control officer testified that the monitoring device on the victim recorded that she entered the premises at 1:51 p.m. and exited the premises at 2:08 p.m. Later, after the victim left the premises, appellant returned and was at the residence for nearly another hour. Another portion of surveillance film showed appellant on the property on June 30th, but the victim was not seen.
Appellant testified in his own behalf and explained that he always called to see if the victim was home before coming over to the house. After the victim was released from jail on her own charges, appellant knew that she was living at the Stuart house with her parents. He testified that the victim's father and sister came to his residence on June 7th to request his help in fixing a vehicle. They assured him that the victim was at work and would not be home until 5 p.m. At first, he stated that he had not gone into the residence, but he then explained that he just went to the door and did not go into the residence itself. However, he did admit that the victim came home during the time he was working on the vehicle, although he made no contact with her and never went into the residence. Then, upon further questioning, he stated that "she gets out of the *1225 Jeep and heads in toward the trailer, started to turn around, and I did holler at her and told her to get in the trailer, don't get me in no trouble." On June 30th, he also admitted being outside the residence, but he did not exit from his truck because he was told the victim was in the residence.
On cross-examination, appellant admitted that he never told his probation officer about this brush with the victim, even though he had informed the officer of a previous "near miss" in the parking lot of the probation office where the victim was reporting at the same time he was. He also admitted that he had not come around the residence for a long time but coincidentally began visiting the home when the victim was placed on house arrest at the home. He did not consider his yelling at the victim to get inside as any form of contact with the victim. Appellant also explained that the sentencing judge had told him that he could visit the family so long as the victim was not there.
The parents of the victim both testified, as did the victim, but their testimony was inconsistent with what was seen on the videotape as well as appellant's testimony. For instance, the mother testified that the victim was in jail on the date that appellant was fixing the vehicle. The victim testified that appellant had no conversation with her, aside from telling him that she was going back to work, nor did she know if he was in the house at the same time she was inside. She also testified that she saw him at the house one other time, and she remained on the patio, refusing to go inside. Finally, the father testified that appellant just showed up unannounced to fix the vehicle on June 7, 1999. While the father acknowledged that his daughter did come home for lunch that day, he testified that appellant did not say a word to her.
During appellant's counsel's closing argument, in which he argued that the contact between appellant and the victim could not be deemed substantial, willful, or material, the court asked about his position with regard to the officer's testimony that appellant entered the residence. Counsel responded that if the court chose to believe that, then he maintained that was not a substantial violation. He also argued that the victim was not at home on the other dates so there could be no substantial violation.
While rejecting a violation of probation based upon the April 12th and June 30th incidents, the court found that the state had proven by the greater weight of the evidence that appellant had violated the terms of his probation based upon the June 7th incident. Specifically, the court found that appellant was in the victim's residence while the victim was also in the residence. Further, through his own testimony, appellant knew the victim was in the residence and spoke to her. These actions constituted a willful, material, and substantial violation of appellant's order of probation. The court revoked probation and sentenced appellant to nine years in prison, with credit for time served. This appeal followed.
The determination of whether a violation of probation is willful and substantial is a question of fact and will not be overturned on appeal unless the record shows that there is no evidence to support it. See Anderson v. State, 711 So.2d 106, 108 (Fla. 4th DCA 1998). "[T]he evidence upon which to predicate a revocation introduced at the hearing must be sufficient to satisfy the conscience of the court that a condition of probation has been violated." Bernhardt v. State, 288 So.2d 490, 495 (Fla.1974); accord Horn v. State, 433 So.2d 670, 671 (Fla. 4th DCA 1983). On appeal, the trial court's order is reviewed under an abuse of discretion standard. See Matthews v. State, 736 So.2d 72, 75 (Fla. 4th DCA 1999).
*1226 Appellant contends this case should be governed by Steiner v. State, 604 So.2d 1265 (Fla. 4th DCA 1992). In that case, a condition of probation required the probationer to have no contact with minors. Despite this provision, the probationer's minor niece accompanied him to an appointment with his probation officer. When the officer notified him that he was in direct violation of the provision, he stated that it did not occur to him that he was violating his probation by taking his niece with him to the office and then to her home. This court reversed the revocation of probation, concluding that the probationer had committed a technical violation of his probation, there was no evidence of willfulness, and it was merely a simple mistake on his part. See id. at 1269.
In this case, although appellant did report a near run-in with the victim in the parking lot of the probation office (where he might be observed), he never mentioned his encounter with the victim at her residence, nor did he tell his probation officer that he, was visiting the victim's residence during the time she was on house arrest.
In Glee v. State, 731 So.2d 759 (Fla. 4th DCA 1999), where a violation of a "no contact" provision was affirmed, we distinguished Steiner on three grounds: (1) if the probationer in Steiner had recognized that his being alone with his niece was a violation, he would not have brought her to his probation officer, which strongly suggested a mistake rather than an intentional violation; (2) in Steiner, the probationer made every attempt to comply with the order; and (3) if the probationer in Steiner had not taken his niece, she would have been stranded without a way home. See Glee, 731 So.2d at 762. These grounds also distinguish this case from Steiner.
This case is closer to Glee. Appellant voluntarily went to the victim's residence on several occasions without a prior invitation, as the father testified that appellant would just show up. This contradicts appellant's testimony that he always called to make sure that the victim would not be present. He spoke to the victim instead of leaving the property once the victim arrived. On the particular date when contact was made, appellant went into the victim's home while she was inside. In addition, as in Glee, the violation was brought to the attention of the probation office due to an investigation by the sheriff, not by appellant's voluntary act. Finally, the trial court is the judge of the credibility of the witnesses. There were inconsistencies between appellant's testimony and other witnesses, and the court clearly rejected appellant's version of what occurred. After careful review of the evidence, we cannot say that the trial court abused its discretion in concluding that a willful and substantial violation occurred.
We do not address appellant's constitutional argument regarding his condition of probation because it was not raised on direct appeal from the initial probation order. See Matthews, 736 So.2d at 74-75. Finally, although appellant makes considerable reference to the exact colloquy between himself and the sentencing judge concerning what might or might not violate his probation, the transcript of the sentencing hearing was not prepared until this appeal was filed. Therefore, it was neither part of the record before the court during the revocation nor was the exact language relied upon by appellant in the proceeding in the trial court.
For the foregoing reasons, we affirm the ruling of the trial court.
STEVENSON and HAZOURI, JJ., concur.